UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LORRAINE WETZEL,
Plaintiff,

-against-

TOWN OF ORANGETOWN, KEVIN NULTY, INDIVIDUALLY AND AS CHIEF OF POLICE, AND THOM KLEINER, INDIVIDUALLY AND AS SUPERVISOR,
Defendants.

---

**06 CIV. 6117**

COMPLAINT FOR 2004 & 2005 DISCRIMINATION & REPRISAL

06 CIV *"ECF Case"*

FILED
U.S. DISTRICT COURT
2006 AUG 11 P 1:58
S.D. OF N.Y. W.P.

**INTRODUCTORY STATEMENT**

This is a action for damages against defendant TOWN OF ORANGETOWN, its police chief, KEVIN NULTY and its town supervisor, THOM KLEINER, for the Defendants' gender discrimination in not promoting plaintiff in 2005, and in retaliating against her for opposing gender discrimination in an earlier and still-pending lawsuit, *Wetzel v. Orangetown*, 03 Civ 9896 (SCR).

**THE PARTIES**

1. Plaintiff LORRAINE WETZEL, is and was at all times relevant herein a citizen of the United States and a resident of the Town of Orangetown, County of Rockland, State of New York.

2. Defendant TOWN OF ORANGETOWN (hereinafter "defendant Town"), upon information and belief, is and at all times relevant herein was a municipal corporation organized and existing under the laws of the State of New York, and located within Rockland County.

3. Defendant KEVIN NULTY (hereinafter "defendant Nulty" or "Chief Nulty"), upon information and belief, is and at all times relevant herein was a resident of the Town of Orangetown, County of Rockland, State of New York, and is sued both individually and as Chief of Police.

4. Defendant THOM KLEINER (hereinafter "defendant Supervisor" or "Town Supervisor"), upon information and belief, is and at all times relevant herein was a resident of the Town of Orangetown, County of Rockland, State of New York, and is sued both individually and as Town Supervisor.

5. Upon information and belief, Defendant Town is an employer within the meaning of 42 U.S.C. § 2000e-(b).

6. Upon information and belief, defendants are "state actors" within the meaning of 42 U.S.C. §§ 1983 and 1988.

## JURISDICTION AND VENUE ALLEGATIONS

7. This court has jurisdiction over this action under 42 U.S.C. § 1983, the First and Fourteenth Amendments to the Constitution of the United States, under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, and under 28 U.S.C. § 1331 and § 1343(4).

## FACTS

***Background & History***

8. Plaintiff is a 26 year veteran of the Defendant Town of Orangetown's police department.

9. Plaintiff is a professional law enforcement officer, and as such is not affiliated with any political party or political organization.

10. Plaintiff is a woman.

11. In 2001, plaintiff filed a New York State article 78 petition alleging, *inter alia*, that she was denied promotion in January 2001 due to gender discrimination.

12. In December 2003, plaintiff filed a federal complaint alleging, *inter alia*, gender discrimination by the defendant Town and defendant Nulty, including discrimination resulting in plaintiff's non-promotion to the rank of lieutenant in January 2001.

13. On or about July 12, 2004, plaintiff filed an amended complaint to include non-promotion in January 2004, and plaintiff's 2004 EEOC charge of discrimination.

14. On or about August 2004, a newspaper article was published in a local Orangetown newspaper, Our Town, which opined that defendant Nulty's police department had created a "glass ceiling" preventing the promotion of female police officers.

15. On September 3, 2004, judgment was entered in the Rockland County Clerk's Office regarding an N.Y.S. Article 78 Proceeding relating to plaintiff's non-promotion, and on September 7, 2004, plaintiff was served with notice of entry of that judgment.[1]

***Retaliatory disciplinary charges***

16. On September 3, 2004 and September 7, 2004, Defendant Nulty preferred (signed) departmental disciplinary charges against plaintiff.

17. Upon information and belief, these disciplinary charges were not prepared in good faith, and have no basis in fact. It is difficult if not impossible to discern from the charges precisely what plaintiff is alleged to have done wrong.

---

[1] Plaintiff brought an article 78 proceeding in 2001, and another in 2004, both of which (the 2001 proceeding through trial litigation) focused on Defendants' noncompliance with the Rockland County Police Act (Chapter 526 of the N.Y.S. Laws of 1936, *as amended*) regarding its statutory criteria for promotion of police officers, namely, seniority, meritorious police service, and superior capacity as shown by civil service examination. Gender discrimination was not the focus of the 2001 proceeding, nor was any claim for gender discrimination part of the 2004 preceding (as plaintiffs federal remedies were already being pursued through the EEOC and ultimately this federal Court).

18. These disciplinary charges were made against plaintiff approximately 6 weeks after plaintiff had filed an amended complaint, in *Wetzel v. Orangetown*, 03 Civ. 9896 (SRC)("*Wetzel I*"), relating to her 2004 non-promotion, and within a week or so of the above-mentioned Our Town newspaper article.

19. Plaintiff had never before faced disciplinary charges during her Orangetown police career.

20. Thus, it appears that the disciplinary charges were unrelated to work performance, but rather were retaliation for plaintiff's opposition to gender discrimination, and designed to sabotage plaintiff's candidacy for a January 2005 promotion.

21. Upon information and belief, the pendency of the disciplinary charges against her was detrimental to plaintiff's candidacy for promotion in January 2005, as plaintiff was not selected even though she was the best qualified candidate.

22. Upon information and belief, plaintiff was not promoted in January 2005, as a result of illegal gender discrimination and retaliation.

***Disciplinary charges as a means of reprisal***

23. Upon information and belief, defendants Nulty uses fabricated disciplinary charges as a means of discriminating or retaliating against, or as a method of improperly controlling, his subordinates.

24. Upon information and belief, Defendant Nulty brought bogus disciplinary charges against a 61 year old police veteran, Sgt. Dennis Flannery, who was a police sergeant with 42+ years of unblemished police service in local policing and the military, for the purpose of forcing his retirement.

25. Upon information and belief, Defendant Nulty brought disciplinary charges against another police veteran, Det. Lt. John McAndrew, because Det. Lt. McAndrew would not cooperate in concocting a disciplinary case against plaintiff, and would not assist Chief Nulty in his retaliation against plaintiff, and to sabotage his opportunity for promotion.

26. Upon information and belief, Defendant Nulty brought disciplinary charges against Police Officer Cathy Sampath because she is a woman.

27. Upon information and belief, Defendant Nulty brought bogus disciplinary charges against Sgt. Barbara Noyes, to sabotage her opportunity for promotion to the rank of lieutenant, because she is a woman.

28. Upon information and belief, Defendant Nulty used the implicit threat of disciplinary charges to deny Police Officer Susan Lanoce benefits in connection with her pregnancy and maternity, which actions caused Lanoce to complain to the U.S. Equal Opportunity Employment Commission, but not to go further, or to otherwise oppose gender discrimination, because of her fear of reprisal from Chief Nulty.

***Gynecological exam and "Sick Checks"***

29. Around the same time as plaintiff was being again passed over for promotion, during the winter of 2004 and 2005, Plaintiff developed a serious medical condition ultimately requiring surgery -- a partial hysterectomy -- in early 2005.

30. Upon information and belief, as a further action evidencing discriminatory gender animus and retaliation, defendant Nulty harassed plaintiff, and caused her to be treated differently than male police officers, included demanding unauthorized and invasive gynecological examination, and "sick checks."

31. In particular, Defendant Nulty and his administration directed that plaintiff undergo a pelvic examination by a male stranger to her--a physician.

32. This physician was not a designated police surgeon.

33. This direction was very upsetting to plaintiff, and caused her anxiety and distress.

34. Upon information and belief, the requested examination was motivated by gender discrimination and reprisal.

35. Defendant Nulty and his administration also subjected plaintiff to unnecessary telephone calls at her residence.

36. These calls are characterized as "sick checks," ostensibly to verify a police officer being at his or her residence during her convalescence.

37. At the time of the calls to plaintiff's residence, Defendant Nulty knew that plaintiff was recovering from major surgery.

38. Upon information and belief, male police officers with less serious medical problems were not subjected to such scrutiny or bothersome telephone calls.

39. Upon information and belief, the sick check upon plaintiff were motivated by gender discrimination and reprisal.

***Pattern of gender discrimination***

40. Defendant Nulty's manipulation of this system for selecting police officers for promotion constituted an ongoing pattern and practice of gender discrimination

41. Upon information and belief, the disciplinary charges preferred against plaintiff in September 2004 was only one of a series of tactics used by Defendant Nulty to prevent plaintiff's promotion to the rank of police lieutenant.

42. Prior to plaintiff commencing her December 2003 federal lawsuit (*Wetzel I*) , Defendant Nulty had never hired a policewoman, nor promoted (or recommended the promotion of) a policewoman, since his becoming chief of police in or about 1996.

43. Regarding non-promotion of policewomen, upon information and belief, defendant Nulty (with the acquiescence of the town board) altered the prior methodology for selecting an officer for promotion to lieutenant in 1997 (the first occasion where a woman, Barbara Noyes, was an eligible candidate for promotion, and the superior candidate under the Police Act), and then altered the methodology again in 2001 when plaintiff was a candidate (and the superior candidate under the Rockland County Police Act), and then altered the methodology again in 2004 and 2005 (with plaintiff again the superior candidate), and altered the methodology again in 2006, when plaintiff was promoted.

***Chief's threatened reprisal, through his attorney, for plaintiff's 2006 promotion and her refusal to abandon discrimination claims***

44. Upon information and belief, defendant Nulty did not recommend plaintiff for promotion in January 2006.

45. Plaintiff was nevertheless promoted by the town board, in January 2006.

46. Plaintiff's promotion was approximately 4 months after this Court's September 5, 2005, decision in *Wetzel I* allowing some or most of Plaintiff's federal claims to survive defendants' motion to dismiss.

47. Defendant Nulty purported to accept and acquiesce with the Town Board's decision to promote plaintiff to the rank of lieutenant in January 2006.

48. Upon information and belief, Defendant Nulty harbors resentment that plaintiff was promoted.

49. Upon information and belief, Defendant Nulty persists in refusing to recognize plaintiff's right to seek a judicial remedy for past and present discrimination and retaliation.

50. In January 2006, defendant Nulty's lawyer, Keane & Bean PC partner Lance Klein, Esq., contacted plaintiff's attorney and requested that plaintiffs attorney propose settlement of the pending federal lawsuit (*Wetzel I*).

51. Plaintiff's attorney responded with a settlement proposal.

52. Defendant Nulty's attorney rejected plaintiff's proposal "out of hand", declined to submit any counterproposal, and instead promised that, if plaintiff were to continue to pursue her federal rights in the *Wetzel I* lawsuit, she would face trial on the September 2004 disciplinary charges.

53. In his February 1, 2006 letter regarding settlement, Mr. Klein wrote Plaintiff's counsel as follows:

> "I also held the mistaken belief that you and your client realized the consequences of the two (2) disciplinary charges pending against her. I can assure you that those cases will be prosecuted as soon as the Court of Appeals makes its determination as to who will hear the charges. It would be a shame for your client, as the first female Lieutenant in the department, to be the first Lieutenant disciplined. (*emphasis added*)

54. Upon information and belief, at the time he wrote his February 1, 2006 letter, Mr. Klein was writing on behalf of both defendant Town and defendant Nulty.

55. Upon information and belief, Mr. Klein's February 1, 2006 letter sought to extort a settlement or discontinuance of plaintiff's legitimate federal claims by the threatened prosecution of disciplinary charges.

56. Upon information and belief, this is an abuse of legal process, an improper and unethical threat to prosecute disciplinary charges to gain advantage in a civil litigation, and constitutes reprisal for plaintiff's right to pursue her federal statutory and constitutional rights.

57. Upon information and belief, defendant Supervisor Kleiner was aware of, and authorized, this abusive litigation tactic in or around January 2006.

58. Defendant Supervisor Kleiner was, at his deposition conducted in July 2006, informed of Mr. Klein's February 1, 2006 letter.

59. Defendant Town's councilman Dennis Troy was, at his deposition conducted in July 2006, informed of Mr. Klein's February 1, 2006 letter and of Defendant Nulty's retaliatory actions toward plaintiff in pursuing disciplinary charges.

***Chief's reprisal, through disciplinary charges***

60. Defendants carried through with Mr. Klein's threat, after plaintiff refused to yield to defendants' attempted extortion of a settlement, by beginning a disciplinary proceeding.

61. In connection with the disciplinary proceeding, the hearing officer, Joseph Wooley, refused to state whether he had prior dealings with Mr. Klein or the law firm of Keane & Beane, PC.

62. In connection with the disciplinary proceeding, Mr. Klein, of the law firm of Keane & Beane, PC., refused whether he or his law firm had any prior dealings or personal or professional relationship with the hearing officer, Joseph Wooley.

63. Upon information and belief, Mr. Klein or the law firm of Keane & Beane, PC, suggested or recommended Mr. Wooley to the Defendant Town for appointment as a hearing officer.

64. Plaintiff's attorney requested that Mr. Wooley recuse himself and withdraw as hearing officer. Mr. Wooley refused to do so.

65. Upon information and belief, this disciplinary trial is a sham proceeding, and mere charade designed to find plaintiff's "guilty" regardless of the evidence presented.

66. A disciplinary trial began on July 11, 2006, and a second day of trial was held on August 4, 2006.

67. The disciplinary trial is scheduled to continue in September.

68. As a result of this ongoing disciplinary trial, plaintiff is suffering increasing damage.

***Plaintiff's excellent performance continues after her January 2006 promotion***

69. After plaintiff's promotion in January 2006, plaintiff was put in charge of the largest patrol squad in defendant Town's police department, the "midnight shift," where she supervised more men than any other patrol lieutenant in the department.

70. As a result of her supervision, the "midnight shift" had measurably better performance, qualitatively and qualitatively, than at any time since defendant Nulty became chief of police.

71. Plaintiff was not subjected to criticisms or corrective counseling, nor warned of any performance deficiencies, neglect, incompetence, misconduct or violation of any rules or regulations, either prior to or after receiving disciplinary charges in September 2004.

72. After being promoted to the rank of lieutenant in January 2006, plaintiff has received no criticisms or corrective counseling, nor warned of any performance deficiencies, neglect, incompetence, misconduct or violation of any rules or regulations.

73. On the contrary, the chief of police purported to regard plaintiff as a bona fide candidate for further promotion, to Administrative Lieutenant, and she was interviewed by the town board for such position in 2006.

74. Upon information and belief, plaintiff's performance since her promotion to Lieutenant gives no indication of any need for corrective training.

75. Plaintiff's performance as a lieutenant in the police department has been diligent, competent and professional.

***Timely EEOC charges-- exhaustion of Title VII remedies***

76. As to Plaintiff's non-promotion in January 2005 and defendants' reprisal and harassment referenced in the prior paragraphs regarding plaintiff's surgery, plaintiff made a timely administrative charge with the U.S. Equal Employment Opportunity Commission (EEOC) in October 2005, and thereafter received a Notice of Right to Sue letter dated May 19, 2006.

77. Therefore plaintiff's post-*Wetzel I* claims are timely as interposed within 90 days of the EEOC notice.

78. Regarding the reprisal, *inter alia*, in the form of the above-described September 2004 disciplinary charges now being prosecuted, plaintiff has submitted a new charge to the EEOC, and she anticipates a Notice of Right to Sue letter will follow, at which time plaintiff intends to amend, or seek amendment of, this complaint.

79. Plaintiff believes that her Title VII rights are in addition to her right under 42 U.S.C. § 1983 to seek judicial relief on her equal protection and First Amendment claims without exhaustion of administrative remedies.

***Injunctive Relief is appropriate***

80. Plaintiff should not be forced again to submit to a retaliatory disciplinary hearing, conducted solely in reprisal for plaintiff's pursuit of a remedy for defendants' violation of her federal rights in the pending *Wetzel I* lawsuit.

81. Plaintiff therefore request that this court grant a permanent injunction against prosecution of disciplinary charges dated September 3, 2004.

## FIRST CAUSE OF ACTION— GENDER AND POLITICAL NON-AFFILIATION DISCRIMINATION IN DENYING PROMOTION IN JANUARY 2005

82. Plaintiff hereby repeats and realleges each allegation contained above.

83. Plaintiff was denied promotion in January 2005 due to her gender and political non-affiliation, in violation of her rights under the Constitution's First and Fourteenth Amendments, remediable under 42 U.S.C. § 1983, and Title VII of the 1964 Civil Rights Act.

84. Instead of plaintiff, a lesser-qualified male officer was selected for promotion.

85. Plaintiff suffered damages thereby.

## SECOND CAUSE OF ACTION— RETALIATION FOR EXERCISING FEDERAL RIGHTS UNDER 42 U.S.C. § 1983 AND TITLE VII

86. Plaintiff hereby repeats and realleges each allegation contained above.

87. Defendants retaliated against plaintiff because plaintiff opposed gender discrimination, opposed unlawful retaliation, and opposed the violation of plaintiff's federal statutory and constitutional rights.

88. Plaintiff was damaged thereby.

## THIRD CAUSE OF ACTION— RETALIATION & DISCRIMINATION IN VIOLATION OF THE N.Y.S. HUMAN RIGHTS LAW

89. Plaintiff hereby repeats and realleges each allegation contained above.

90. Upon information and belief, defendants have discriminated and retaliated against plaintiff due to her charges of discrimination and for seeking relief from the judiciary.

91. Defendants have also discriminated against plaintiff in the terms and conditions of her employment, and her promotional opportunities, on account of gender, opposing gender discrimination, and on account of her political non-affiliation.

92. Defendant Town has violated the N.Y.S. Human Rights Law. See, N.Y.S. Executive Law article 15 and §§ 296 et seq.

93. Damages and injunctive relief are authorized by Executive Law § 297 (9)("person... aggrieved .. shall have a cause of action in any court of appropriate jurisdiction for damages ...and such other remedies as may be appropriate....").

94. Plaintiff was damaged thereby.

## FOURTH CAUSE OF ACTION — ABUSE OF PROCESS

95. Plaintiff hereby repeats and realleges each allegation contained above.

96. Upon information and belief, defendants have instituted, and are prosecuting, disciplinary charges under color of the authority of the Rockland County Police Act ("Police Act").

97. Plaintiff is compelled by her status as a police officer to respect all legal process instituted under the Police Act.

98. Defendant have issued legal process compelling plaintiff to attend a disciplinary proceeding scheduled on July 11, 2006.

99. Defendants' purpose in pursuing these display or charges is not proper, but rather as the ulterior motive of reprisal, and for the purpose of coercing plaintiff into settling or discontinuing her federal civil rights lawsuit against defendants.

100. Defendants' use of disciplinary proceedings here constitutes an abuse of legal process, and a perversion of legal process, designed by defendants' to obtain a collateral advantage, and is otherwise intended to benefit defendants through means which are outside the legitimate ends of the process.

101. This was malicious, wanton and intentional conduct on the part of defendants warranting an award, as to the individual defendants, of punitive damages.

102. Plaintiff was damaged thereby.

**FIFTH CAUSE OF ACTION—**
**REQUEST FOR A PERMANENT INJUNCTION**

103. Plaintiff hereby repeats and realleges each allegation contained above.

104. Defendants' are pursuing departmental disciplinary charges against plaintiff in reprisal for her opposition to unlawful discrimination, and for the reason that plaintiff will not abandon, or settle, her federal lawsuit.

105. Upon information and belief, defendants are attempting to extort a favorable settlement from plaintiff in her previously filed federal lawsuit (*Wetzel I*) through the use of disciplinary charges.

106. Defendants' attorney, acting on behalf of defendants, was fully cognizant of the embarrassment, humiliation, and potential for a permanent stain on plaintiff's reputation and police career when he wrote:

> "It would be a shame for your client, as the first female Lieutenant in the department, to be the first Lieutenant disciplined."

107. Plaintiff is continuing to be damaged, as of the date of this complaint, through the defendants' malicious ongoing pursuit of disciplinary charges dated September 7, 2004, relating to events of over two years ago.

108. Plaintiff will be further damaged if defendants are permitted to pursue, in a new and separate proceeding, disciplinary charges dated September 3, 2004.

109. Upon information and belief, the September 7th charges are being prosecuted separately from the September 3rd charges solely to harass plaintiff, and add to the burden and expense of defending against the bogus and retaliatory charges.

110. There is no adequate remedy at law, because money damages cannot remedy the chilling effect this retaliation will have not only on plaintiff, but on all other similarly situated federal plaintiffs, and all potential witnesses or others who will be chilled in coming to the aid of a victim of discrimination or other civil rights violation because of the threat of this type of reprisal, and to the other members of defendants' police department.

111. Plaintiff requests that this Court issue a permanent injunction against defendants, and grant such other such other and further equitable relief as the Court may direct.

WHEREFORE, plaintiff prays that this Court grant judgment to her containing the following relief:

1. An award of damages in the sum of $1 million;
2. An award of punitive damages in the sum of $3 million.
3. Granting plaintiff a permanent injunction against further reprisals.
3. An award of reasonable attorneys' fees and the costs of this action; and
4. Awarding plaintiff such other and further relief as the Court deems just and equitable.

**Jury Demand**

*Plaintiff demands trial by jury in this action.*

Dated: Stony Point, New York
August 11, 2006

MICHAEL D. DIEDERICH, JR.
*Attorney for Plaintiff (MD 2097)*
361 Route 210
Stony Point, N.Y. 10980
845-942-0795